UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| Kal-Mor-USA, LLC, | ) | |
| | ) | |
|         Plaintiff, | ) | Case No.: 2:13-cv-0682-GMN-PAL |
| vs. | ) | |
| | ) | **ORDER** |
| U.S. Bank, N.A.; *et al.*, | ) | |
| | ) | |
|         Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 55), filed by Plaintiff Kal-Mor-USA, LLC ("Kal-Mor"). Defendant U.S. Bank, N.A. ("U.S. Bank") filed a response in opposition, (ECF No. 60), and Kal-Mor replied, (ECF No. 62).

Also before the Court is U.S. Bank's Motion for Summary Judgment. (ECF No. 56). Kal-Mor filed a response in opposition, (ECF No. 59), and U.S. Bank replied, (ECF No. 61). For the reasons set forth herein, U.S. Bank's Motion will be granted and Kal-Mor's Motion will be denied.

## I.    BACKGROUND

This case arises out of a homeowner association's foreclosure sale upon the property located at 3155 Casey Drive #202, Las Vegas, Nevada 89120 (the "Property"). On June 24, 1993, Defendant Canyon Willow Owners' Association ("Canyon Willow") recorded a Declaration of Covenants, Conditions and, Restrictions ("CC&Rs") as to the condominium development in which the Property is located. (ECF No. 56-12).[1] On September 10, 2004, Samantha Fusco obtained a mortgage loan for $100,000 from Countrywide Home Loans, Inc., which was secured by a deed of trust recorded against the Property. (Deed of Trust p. 2, ECF

---

[1] As matters of public record, the Court takes judicial notice of Exhibits A-H and Exhibit L attached to U.S. Bank's Motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

1  No. 56-1).  The Note and Deed of Trust were assigned to Bank of America, N.A. ("BANA"),
2  on March 15, 2012, and were subsequently assigned to U.S. Bank on February 13, 2013.
3  (Assignments of Deed of Trust, ECF Nos. 56-2, 56-3).

4  After obtaining the mortgage loan, Ms. Fusco defaulted under the CC&Rs, and Canyon
5  Willow, through its agents, recorded a notice of delinquent assessment, a notice of default and
6  election to sell, and a notice of sale. (Recorded Notices, ECF Nos. 56-4, 56-5, 56-6).  On
7  February 2, 2013, a foreclosure sale was held, in which former Plaintiff First 100, LLC
8  purported to purchase the Property for $2,000. (Foreclosure Deed Upon Sale, ECF No. 56-7).
9  On February 28, 2013, after the filing of the original Complaint in this action, First 100, LLC
10 purported to convey title to the Property to Kal-Mor. (Deed of Sale, ECF No. 56-8).

11 On July 22, 2011, prior to Canyon Willow's foreclosure sale, BANA, through its agent,
12 tendered a check in the amount of $1,242 to Canyon Willow's foreclosure trustee, attempting to
13 fully satisfy Canyon Willow's superpriority interest in the Property. (Exhibit I to U.S. Bank's
14 Motion, ECF No 56-9).  This tender was rejected, and Canyon Willow proceeded to carry out
15 its foreclosure sale.

16 First 100, LLC filed the original Complaint in this action on February 26, 2013.
17 (Compl., Ex. A to Pet. for Removal, ECF No. 1-1).  On April 4, 2013, after First 100, LLC
18 purported to convey the Property to Kal-Mor, an Amended Complaint was filed which
19 substituted Kal-Mor as the sole plaintiff. (Amended Complaint, Ex. F to Pet. for Removal, ECF
20 No. 1-1).  The Amended Complaint sets forth a claim against U.S. Bank, STS Real Estate
21 Services, and Canyon Willow for quiet title, seeking a declaration that Kal-Mor owns title to
22 the Property, and that Defendants' interests have been extinguished. (Am. Compl. ¶¶ 16-24).
23 U.S. Bank has asserted a counterclaim against Kal-Mor for quiet title, seeking, *inter alia*, a
24 declaration that the foreclosure sale did not extinguish the Deed of Trust because Canyon
25 Willow wrongfully rejected the tender of the superpriority component of its lien. (Answer ¶¶

33-44, ECF No. 42).[2]  In the instant Motions, Kal-Mor and U.S. Bank each request that the Court enter summary judgment as to the pending quiet title claims.[3]

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

---

[2] Kal-Mor and U.S. Bank each purport to set forth a claim for injunctive relief. (Am. Compl. ¶¶ 25-32); (Answer ¶¶ 71-77).  However, it is well established that injunctive relief is a remedy rather than an independent cause of action. *See, e.g.*, *Nationstar Mortgage, LLC v. Hometown W. II Homeowners Ass'n*, No. 2:15-cv-1232-RCJ-NJK, 2015 WL 5092805, at *1 n.1 (D. Nev. Aug. 26, 2015).  Accordingly, the Court construes the parties' requests for an injunction as prayers for relief.

[3] U.S. Bank has also asserted cross-claims against Canyon Willow for breach of Nev. Rev. Stat. § 116.113 and wrongful foreclosure.  However, U.S. Bank does not appear to discuss these claims in its Motion for Summary Judgment, and they will therefore not be addressed herein.

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

    If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

    At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

III.   **DISCUSSION**

In its Motion for Summary Judgment, U.S. Bank argues that Canyon Willow's foreclosure sale should be set aside because BANA, as U.S. Bank's predecessor in interest, tendered the superpriority amount of Canyon Willow's lien prior to the sale. Indeed, The Nevada Supreme Court has ruled that a common-interest community association's foreclosure sale must be set aside where there is a "grossly inadequate" sale price and "fraud, unfairness, or oppression." *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016) (citing *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982)). Therefore, in determining whether to set aside Canyon Willow's foreclosure sale, the Court will first assess whether the sale price of the Property was grossly inadequate, and will then determine whether Canyon Willow's conduct in rejecting the tender amounted to fraud, unfairness, or oppression.

### A. Gross Inadequacy of Sales Price

In *Shadow Wood HOA*, the Nevada Supreme Court noted that a sales price is generally considered to be grossly inadequate when it is less than 20% of a property's fair market value. *Shadow Wood HOA*, 366 P.3d at 1112; *see also NRES-NV1, LLC v. Snyder*, No. 3:15-cv-0133-RCJ-VPC, 2016 WL 2637809, at *2 (D. Nev. May 6, 2016). In this case, U.S. Bank has satisfied its burden to demonstrate that the Property's sale price was grossly inadequate. The 2004 mortgage loan which was secured by the Property was in the amount of $100,000. (Deed of Trust, ECF No. 56-1). Moreover, U.S. Bank asserts, and Kal-Mor does not dispute, that the Property's fair market value at the time of the foreclosure sale was $63,000. (U.S. Bank MSJ 11:1-3). Thus, as the Property was sold for $2,000 at Canyon Willow's foreclosure, the sales price represented less than 4% of the Property's fair market value, and was grossly inadequate.

### B. Fraud, Unfairness, or Oppression

Another court in this district has recently set aside a homeowner association's foreclosure sale after finding that the association engaged in unfair and oppressive conduct by

1  rejecting a tender of the value of its superpriority interest. *NRES-NV1, LLC*, 2016 WL 2637809,
2  at *2. Additionally, the Nevada Supreme Court has recognized that "a deed of trust
3  beneficiary's tender of the purported superpriority portion of an HOA's lien is a relevant
4  consideration when determining whether an HOA foreclosure sale extinguishes [a] deed of
5  trust." *Nationstar Mortgage, LLC v. Premier One Holdings, Inc.*, No. 67722, 2016 WL
6  1109122, at *1 (Nev. Mar. 18, 2016).

7  In the instant case, U.S. Bank's predecessor in interest tendered $1,242 on July 19, 2011,
8  to fully satisfy Canyon Willow's superpriority interest in the Property. (Exhibit I to U.S. Bank's
9  MSJ). Instead of simply accepting this amount to satisfy its superpriority interest, Canyon
10 Willow chose to foreclose upon the Property. Notably, Kal-Mor does not assert that the
11 tendered amount was insufficient to satisfy the superpriority portion of Canyon Willow's lien.
12 Indeed, a document produced by Canyon Willow confirms that the monthly assessment upon
13 the Property was $138, which confirms that the value after nine months would have been
14 exactly $1,242. (Resident Transaction Report, Exhibit I to U.S. Bank's MSJ p. 3).[4] Therefore,
15 it is apparent from the record that Canyon Willow engaged in unfair and oppressive conduct, as
16 it carried out its foreclosure sale after refusing to accept tender of an amount that would have
17 satisfied its superpriority interest.

18 As the Court finds that there is no genuine issue of material fact as to whether the sale
19 price was grossly inadequate and whether the foreclosure sale was subject to fraud, unfairness,
20 or oppression, summary judgment is warranted in U.S. Bank's favor as to the pending quiet

---

[4] Kal-Mor argues that the Court should not consider BANA's tender in determining whether the foreclosure sale should be set aside, because Canyon Willow's lien was not recorded for several months after it rejected BANA's tender of the superpriority amount. (Kal-Mor's Resp. 5:23-6:4). However, the mere fact that BANA did not repeatedly tender this amount does not alter the unfair and oppressive nature of Canyon Willow's conduct. The fact that Canyon Willow rejected the tender without explanation while pressing on with its attempt to foreclose upon the Property made its intent quite clear. The record in this case demonstrates that BANA would have been warranted in believing that any further attempt to tender the superpriority amount of Canyon Willow's lien would have been similarly rejected, and therefore BANA bore no obligation to tender the superpriority amount again.

title claims. Accordingly, U.S. Bank's Motion for Summary Judgment will be granted, Kal-Mor's Motion for Summary Judgment will be denied, and the foreclosure sale will be set aside.[5]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that U.S. Bank's Motion for Summary Judgment, (ECF No. 56), is **GRANTED**.

**IT IS FURTHER ORDERED** that Kal-Mor's Motion for Summary Judgment, (ECF No. 55), is **DENIED**.

**IT IS FURTHER ORDERED** that U.S. Bank shall file a report on or before June 14, 2016, detailing the status of its cross-claims against Canyon Willow.

**DATED** this __27__ day of May, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[5] As the Court finds that the foreclosure sale must be set aside based on the grossly inadequate sale price and accompanying unfairness and oppression, it need not address U.S. Bank's argument that the foreclosure sale was invalid because provisions of Nev. Rev. Stat. § 116 violate the due process clauses of the United States and Nevada Constitutions.